UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **PHILIP KOKOSKA** : | **CIVIL ACTION NO.** |
| **Plaintiff** : | **3:12 CV 1111 (MPS)** |
| v. : | |
| **CITY OF HARTFORD;** : | |
| **CHIEF DARYL K. ROBERTS, in his** : | |
| official and individual capacity; : | |
| **OFFICER J. CARROLL, in his** : | |
| official and individual capacity; : | |
| **OFFICER GEORGE MATTHEWS, in his** : | |
| official and individual capacity; : | |
| **OFFICER MAURICE WASHINGTON, in his** : | |
| official and individual capacity; : | |
| **DETECTIVE V. OTERO, in his** : | |
| official and individual capacity; : | **February 7, 2014** |
| **SERGEANT St. JOHN, in his official** : | |
| and individual capacity. : | |
| **Defendants** | |

### DEFENDANTS' JOINT MOTION IN LIMINE
### REGARDING WRITTEN STATEMENT OF JILL CARON

The defendants, City of Hartford, Chief Daryl Roberts% Officer Jonathan Carroll, Officer George Matthews, Officer Maurice Washington, Detective Victor Otero and Sergeant Sean St. John hereby respectfully submit this motion in limine with respect to the written statement of Jill Caron. The defendants seek to exclude this written statement from introduction into evidence for the following reasons:

1. The written statement of Jill Caron is hearsay and no exception to the hearsay rule applies. Fed.R.Evid. 801(c) and 802.

2. The written statement of Jill Caron contains inadmissible lay opinion about material issues in the case, such as the reasonableness of the force used by the defendants. Fed.R.Evid. 701.

---

1111 order to resolve a discovery dispute the plaintiff agreed with withdraw all  Monell claims as well as all claims against Chief Roberts, and has agreed to file an Amended Complaint to reflect the same. However, the plaintiff has not yet done so.

1

3. The written statement of Jill Caron contains inadmissible evidence of the plaintiff's alleged non-violent character. Fed.R.Evid. 404(a)(1).

4. The written statement includes inadmissible lay opinion testimony regarding the cause and permanency of the plaintiff's claimed facial scar. Fed.R.Evid. 701 and 702.

5. The written statement of Jill Caron also includes inadmissible secondary hearsay evidence of the alleged opinions of an unidentified female police officer, whom Ms. Caron claims agreed that defendant police officers' actions were unreasonable. Fed.R.Evid. 701, 702 801 and 802.

6. The written statement includes irrelevant statements as to Ms. Caron's own emotions and personal reactions to the events she claims to have observed. Fed.R.Evid. 401, *et seq.*

Furthermore, in the event that Ms. Caron is called live to testify as a witness, the defendants move that her testimony be restricted to her personal observations and that she be precluded from offering testimony in the form of hearsay or lay opinion such as that which is included within her written statement.

## II.     Facts and Procedural History

### A.     Allegations of the Plaintiff's Amended Complaint.

The operative complaint in this matter is plaintiff's Amended Complaint, dated February 7, 2013. (Doc. No. 38). This case arises out of the arrest of the plaintiff on November 25, 2010 at approximately 12.30 a.m. The plaintiff's complaint alleges that Jonathan Carroll, Maurice Washington, George Matthews and Detective Victor Otero and Sergeant Sean St. John (collectively "the defendant police officers") of the Hartford Police Department "wrongfully and without legal justification or cause conducted an unreasonable search/seizure of him and further conducted an unlawful arrest and illegal, malicious prosecution of him for disorderly conduct, interference with a police officer and assault on a police officer." Doc. 38, Amended Complaint,

The plaintiff has provided the defendants with a proposed Second Amended Complaint that will be filed by agreement but which the plaintiff has not yet filed. The Second Amended Complaint will delete all claims against Chief Roberts and will delete all <u>Monell</u> claims. This motion in limine is addressed specifically to the proposed Second Amended Complaint, which the plaintiff has affirmatively represented his intent to file. The proposed Second Amended Complaint asserts claims alleging that defendant police officers violated the plaintiff's rights secured by the Fourth and Fourteenth Amendments to the United States Constitution and Article First §§ 7 and 9 of the Connecticut Constitution by stopping, detaining, searching and seizing the plaintiff without probable cause, by using excessive force upon him, and by failing to protect him from the actions of the other officers. The other counts contained in the proposed Second Amended Complaint, include Connecticut state common law claims of assault and battery, intentional infliction of emotional distress, negligent conduct, reckless conduct, negligent infliction of emotional distress, and duties of indemnification as to the City of Hartford.

  B. <u>Defendants Answer and Defense</u>

The defendants have denied the allegations of the plaintiff's complaint and have asserted multiple special defenses. At trial, the defendants intend to present evidence which will show that plaintiff's claims are without merit. The defendants will show that Officer Carroll witnessed an argument between the plaintiff and Jill Caron, his ex-girlfriend, regarding a cell phone. Defendants will show that Officer Carroll saw the plaintiff grab Ms. Caron's wrist and he approached both the plaintiff and Ms. Caron to intervene. The defendants will present evidence to show that the plaintiff refused to comply with Officer Carroll's instructions to step away from the situation, and that when Officer Carroll informed the plaintiff that he was under arrest (for disorderly conduct), the plaintiff swung around and punched Office Carroll in the face. This was

followed by a struggle between the plaintiff and Officer Carroll, in which Officers Matthews, Washington, Sergeant St. John and Detective Otera eventually joined in order to assist Officer Carroll in subduing the plaintiff.

The defendants contend that during the arrest of the plaintiff, the defendant officers used a level of force necessary to overcome the plaintiff's active resistance to his arrest. Due to the plaintiff's resistance to his arrest, force was necessary to obtain his compliance. During the course of his arrest, the plaintiff was brought down to the ground two times, during which he suffered lacerations to his face. After gaining control of the plaintiff and handcuffing him, the arresting officers realized that he was injured and an ambulance was immediately called. The plaintiff was transported to Hartford Hospital.

Upon release from the Hospital, he was booked at the Hartford Police station and charged with disorderly conduct, assaulting a police officer, and interference. The plaintiff applied for, and was granted, accelerated rehabilitation, the conditions of which were that he undergo evaluation for anger management and perform 25 hours of community service.

C.  Written Statement of Ms. Caron

During the discovery phase of this case, the plaintiff produced to the defendants a written statement that is purported to be that of Jill Caron. This statement is attached as Exhibit A. Ms. Caron is the plaintiff's former girlfriend, and it was the dispute between them that Officer Carroll observed that prompted Officer Carroll to approach the plaintiff. Ms. Caron witnessed a portion of the struggle that ensued between the plaintiff and the defendant police officers. The statement is not addressed to any particular person or office and it is not sworn. Within the statement Ms. Caron confirms that the plaintiff had grabbed at her phone prior to the struggle with the officers. Ms. Caron did not witness how the struggle commenced, as she had turned away from Officer

Carroll and the plaintiff to re-join her friends. Nonetheless, Ms. Caron repeatedly offers the lay opinion that the conduct of the police officers was "violent" and "out of control."

The written statement also includes secondary hearsay evidence of the claimed opinion of an unnamed female police officer, whom Ms. Caron asserts agreed with Ms. Caron that the defendant police officers conduct was inappropriate. The statement also includes multiple other inadmissible statements as set forth in greater detail below.

**I.     Law and Argument**

"To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." Fed.R.Evid. 103(d). "The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so doing, the court is not bound by evidence rule, except those of privilege." Fed.R.Evid. 104(a)

   A.   <u>Ms. Caron's statement is inadmissible hearsay.</u>

Hearsay is not admissible unless a federal statute, the Federal Rules of Evidence or other rules prescribed by the Supreme Court provide otherwise. Fed.R.Evid. 802. Hearsay is defined a "statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."

In this case the written statement of the declarant, Jill Caron, was clearly was not made while Ms. Caron was testifying at the upcoming trial. Furthermore, the statement is not sworn. Additionally, the only possible basis for the plaintiff to offer the statement is to prove the truth of the matters asserted with in it, which is that the officers beat and tased the plaintiff, and that their conduct was violent, unnecessary, unreasonable and excessive. Furthermore, none of the

exceptions to the rule against hearsay contained within Rules 803 or 804 apply to Ms. Caron's statement.

      B.  <u>Ms. Caron's statement contains multiple instances of inadmissible lay opinion evidence regarding the reasonableness of the defendants' conduct</u>

Ms. Caron has not been disclosed or qualified as any form of expert in this case. Rule 701 provides that unless a witness is testifying as an expert, the witnesses may not offer opinion evidence unless it is "(a) rationally based upon the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702." Fed.R.Evid. 701 (emphasis added). The Rule uses the conjunctive "and," thus indicating that all three requirements must be met before lay opinion may be offered.

> Rule 701's helpfulness requirement is designed to provide "assurance[ ] against the admission of opinions which would merely tell the jury what result to reach." Fed.R.Evid. 704 Advisory Committee Note on 1972 Proposed Rules. Thus, if "attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by [Rule 701]." Fed.R.Evid. 701 Advisory Committee Note on 1972 Proposed Rules.
>
> <u>United States v. Rea,</u> 958 F.2d 1206, 1215-16 (2d Cir. 1992).

Ms. Caron's written statement includes multiple opinions regarding the conduct of the defendants. Specifically, she opines that the plaintiff "wasn't resisting or fighting back," that "everything was completely out of control," that the "violence against [the plaintiff] was completely unnecessary and the officers seemed completely out of control of the entire situation," that the "situation was taken overboard" and that the plaintiff was an "innocent person." <u>Exhibit A.</u> Ms. Caron's opinions fail to meet both prongs (a) and (b) of Rule 701's limited allowance of opinion testimony.

First, Ms. Caron's statement does not indicate that her opinions are "rationally based upon [her] perception." "When a witness has not identified the objective bases for [her] opinion,

6

the proffered opinion obviously fails completely to meet the requirements of Rule 701, first because there is no way for the court to assess whether it is rationally based on the witness's perceptions, and second because the opinion does not help the jury but only tells it in conclusory fashion what it should find." United States v. Rea, 958 F.2d 1206, 1216 (2d Cir. 1992). Ms. Caron's statement indicates that she and the plaintiff were separated by a police officer and that after that separation she began to "look around for [her] friends to go home," and started to cross the street. There is nothing in Ms. Caron's statement to indicate that she saw how the struggle between the plaintiff and the officers commenced. There is nothing to indicate that Ms. Caron saw why or how the plaintiff was brought to the ground. Based upon the statement, Ms. Caron turned away and did not see the plaintiff again until he was on the ground. Therefore, Ms. Caron had no perception upon which to believe that the officer's conduct in arresting and subduing the plaintiff was unreasonable.

Furthermore, Ms. Caron's opinions are not necessary to helping the jury understand her testimony or to determine a fact in issue. "[In] order to conclude that such testimony [lay opinion testimony] is admissible, the court must find that the witness' testimony is based upon his or her personal observation and recollection of concrete facts ... and that those facts cannot be described in sufficient detail to adequately convey to the jury the substance of the testimony." United States v. Jackson, 688 F.2d 1121, 1124 (7th Cir. 1982) (internal citations omitted). Ms. Caron's statement and testimony can easily be limited to describing her personal observations and concrete facts such as the relative positions of the plaintiff and the officers, and the physical movements and interactions of the plaintiff, and each of the officers, so as to enable the jury to conclude for itself whether the officers' actions were reasonable or excessive without resort to commentary that the defendant police officers were "violent" or "out of control," or that their

actions were "unnecessary." The only purpose of the use of such opinion testimony is to tell the jury that Ms. Caron as "taken sides" and to tell the jury what it should find. Therefore, Ms. Caron's written statement is inadmissible because it contains inadmissible opinion testimony, and if Ms. Caron is called to testify live she should be precluded from offering such opinions.

> C. <u>Ms. Caron's statement contains inadmissible evidence of the plaintiff's non-violent character.</u>

Among the opinions asserted in Ms. Caron's statement is that there was "no indication that [the plaintiff] was going to be violent nor **has he ever been a violent person."** <u>Exhibit</u> A, p. 1 (emphasis added). Federal Rule of Evidence 404(a)(1) provides that "Evidence of a person's character or character trait is not admissible to prove that on that particular occasion the person acted in accordance with the character or trait." As indicated above, the defendants will present evidence to indicate that the reason Officer Carroll had approached the plaintiff was because he grabbed at Ms. Caron's wrist, and that the altercation began when the plaintiff punched Officer Carroll in the face. The only possible purpose of Ms. Caron's statement is to provide a basis for the jury to disregard Officer Carroll's expected testimony, and to conclude that because the plaintiff is not a violent person that he would not have grabbed Ms. Caron's wrist or punched Officer Carroll on this particular occasion. Therefore, Ms. Caron's statement should be precluded and in the event that Ms. Caron testifies live she should similarly be precluded from offering any opinion regarding the plaintiff's alleged non-violent character.

> D. <u>Ms. Caron's statement contains inadmissible lay opinion testimony regarding the cause and permanency of the plaintiff's alleged scars.</u>

Ms. Caron's statement also claims that the plaintiff now "has scars on his face that may never go away" and she attributes the scars to the plaintiff's interaction with the defendant officers. Ms. Caron is not a physician or other healthcare provider, and has not been disclosed as any other form of expert witness. She is, therefore, not qualified to testify regarding the cause of

any scar the plaintiff may have; nor is she qualified to testify as to whether such scars are permanent. Therefore, Ms. Caron's statement should be precluded pursuant to Rules 701 and 702 because she is not an expert, and similarly any such testimony, which she might intend to provide in live proceedings should be similarly precluded.

> E. <u>Ms. Caron's statement contains inadmissible hearsay evidence regarding the alleged opinion of an unidentified police officer as to the reasonableness of the defendants' alleged conduct.</u>

Finally, Ms. Caron's statement also recounts an anecdote in which she claims a female police officer called her to provide her information regarding the plaintiff's medical condition following the altercation with police. <u>Exhibit A,</u> p. 2. According to Ms. Caron's statement, Ms. Caron recounted the incident to the female officer and the officer "agreed when I told her this situation was taken overboard." The female officer has never been identified to the defendants by name.

First, this statement is inadmissible because it is hearsay within hearsay. (As explained above, Ms. Caron's entire statement is hearsay and the alleged statement of the female officer is also hearsay). Furthermore, the opinion of the unidentified female officer is inadmissible opinion evidence. There is no indication that the unidentified female officer observed or in any manner had any first-person perception of the interaction between the plaintiff and the defendant police officers. Therefore, her opinion could not be admissible non-expert opinion pursuant to Rule 701. Furthermore, such opinion cannot be admitted pursuant to Rule 702 because the female officer has never been identified by name, much less as an expert, and her qualifications are entirely unknown.

Therefore, Ms. Caron's statement should also be precluded because it contains this inadmissible content regarding the alleged opinions of an unidentified female officer. Moreover,

9

should Ms. Caron be called to testify live at trial she should similarly be precluded from testifying regarding this alleged conversation with the unidentified female officer.

> F. <u>Ms. Caron's statement include multiple irrelevant, and unduly prejudicial references to her own emotional reactions and state of mind regarding the incident.</u>

Finally, Ms. Caron's statement contains multiple references to her own emotions reactions regarding the incident. For example, Ms. Caron's opines that after separating from Officer Carroll and then later hearing yelling, she observed the ongoing struggle and "realized very quickly that something was very wrong." Ms. Caron's statement indicates that during portions of the events she was "crying," that she "felt like everything was completely out of control." Ms. Caron also relayed that after the incident she was "devastated" and felt that it "isn't natural to leave a friend in a situation such as this..." and that the incident "is a vision that [she] will never forget."

All of these characterizations and commentary are statements of Ms. Caron's own emotional reactions and her own state of mind during and after the events. Ms. Caron is not a party to this litigation, and therefore, her emotions during and regarding the incident are irrelevant and inadmissible. Fed.R.Evid. 401 (definition of relevance) and 402 (irrelevant evidence inadmissible). Furthermore, even if relevant, Ms. Caron's emotional recollections should be excluded because any probative value them may have is substantially outweighed by the danger of causing unfair prejudice to the defendants and of wasting time. Fed.R.Evid. 403.

### III.     Conclusion

For the foregoing reasons the plaintiff should be precluded from admitting into evidence the type-written statement of Ms. Caron.

**RESPECTFULLY SUBMITTED,**

| | |
|---|---|
| **THE DEFENDANTS,** | **THE DEFENDANTS:** |
| **City of Hartford,** | **Officer J. Carroll, Officer Matthews, Officer** |
| **Chief Daryl K. Roberts, In his Official** | **Washington, Detective Otero, Sgt. St. John** |
| **and Individual Capacities** | **In their Official and Individual Capacities** |
| | |
| BY: /s/ Nathalie Feola-Guerrieri | BY/s/ Rebecca M. Harris |
| Nathalie Feola-Guerrieri, Esq. | Rebecca M. Harris |
| Senior Asst. Corp. Counsel | Federal Bar ct26669 |
| 550 Main Street, Suite 210 | Crumbie Law Group, LLC |
| Hartford, CT 06103 | 100 Pearl Street, 12th Fl. |
| Federal Bar No.: ct17217 | Hartford, CT 06103 |
| Telephone (860) 757-9700 | Telephone (860) 725-0025 |
| Facsimile (860) 722-8085 | Facsimile (860) 722-8114 |
| Email: feoln001@hartford.gov | Email : rharris@crumbielaw.com |

## CERTIFICATION

       This is to certify that on this February 7, 2014 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Nathalie Feola-Guerrieri
Sr. Asst. Corporation Counsel
550 Main Street, Suite 210
Hartford, CT 06103
Feoln001@hartford.gov

A. Paul Spinella, Esq.
Spinella & Associates
One Lewis Street
Hartford, CT 06103
Spinella_law@yahoo.com

                                                           /s/ Rebecca M. Harris